EDWARDS and another vs. REMINGTON.

*January 17 — February 8, 1881.*

CONTRACTS: PARTNERSHIP: PLEADING. *(1) Contracts of partners with each other; when enforceable at law. (2, 3) Mutual agreement as to payment of firm debts; payment by one on default of another; remedy. ·(4) Complaint in such a case construed.*

1. A contract between partners which can be enforced without a general accounting as to the partnership business, may be enforced at law, if of such a nature as to be so enforceable when made between persons not partners.

2. If the several members of a firm, indebted in at least a certain sum, by mutual agreement, apportion that sum among themselves, each promising the others, in consideration of their like promises, to pay a stipulated amount and save them harmless therefrom, the contract is enforceable at law.

3. In such a case, if any one of the partners neglects to pay his stipulated part of the firm indebtedness, within a reasonable time after the same becomes due, any other copartner may pay the same, without awaiting an action therefor, and, the whole amount apportioned being paid, may recover of the delinquent partner the amount thus paid to make good his delinquency.

4. A complaint based upon such a mutual agreement among copartners as is above described, alleges that defendant has neglected and refused to pay the amount assumed by him, and that, *in consequence thereof, plaintiffs have been compelled to pay that amount.* *Held,* that this allegation admits and requires proof that the whole firm debt apportioned had been paid before the action was brought.

APPEAL from the Circuit Court for *Wood* County.

The case is thus stated by Mr. Justice TAYLOR:

"The complaint alleges that, prior to 1873, *John Edwards*, L. P. Powers, John Rablin, Seth Reeves, Reuben C. Lyon and the defendant were copartners, engaged as such in the construction of the Wisconsin Valley Railroad; that said partnership was dissolved in September, 1873; that at that time the firm was indebted in the sum of $20,000; that immediately before the dissolution of the firm, the respective members thereof met together and apportioned the amount of the in-

debtedness of the firm to the several members thereof, according to their just and equitable proportions; that the just proportion of such indebtedness then apportioned to the defendant was about $5,000, which said defendant agreed to pay and save the other members harmless therefrom, in consideration of the agreement then and there made by and on the part of the several other members of said firm to pay and save all others harmless from the said amounts apportioned to them respectively. The complaint further alleges that, after such agreement and apportionment, the plaintiff *Scott* entered into business with the plaintiff *Edwards*, and became and was liable to and with the said *Edwards* to pay a certain proportion of all the liabilities of said *Edwards* for or incurred by said firm; that the plaintiffs have paid their just proportions of said indebtedness, but the defendant has utterly neglected and refused to pay the amount so apportioned to and assumed to be paid by him; and *that in consequence of his said failure the plaintiffs have been compelled to pay, and have paid, the said amount apportioned to the defendant*, which, together with the interest thereon, amounts to about $6,000, for which sum the defendant is justly indebted to the plaintiffs.

"The answer denies all the material allegations of the complaint, except the facts of the partnership and the dissolution of the same, and the fact that the plaintiff *Scott* became liable to pay a portion of all the firm debts for which the plaintiff *Edwards* was liable.

"The evidence upon the trial tends very strongly to show that in August, 1873, the members of said firm met and had a settlement of the affairs of the firm, and then ascertained that the indebtedness of the firm was $20,000, as near as they could estimate it, and finally agreed what amount each one should assume individually of that sum; that the defendant assumed $4,500; John Rablin, $5,250; *John Edwards & Co.*, $6,250; R. C. Lyon, $1,000; L. P. Powers, $3,000; and that each member agreed to pay the share assumed by him. The

sum apportioned and assumed by each party was not the amount which, as between the partners, he would be legally liable to pay, but according to his supposed ability to pay. The evidence further tended to show that there was at this time due to the firm, from the railroad company, $60,000 of the capital stock of such company, and that the partners divided this stock amongst themselves at the same time that the indebtedness was apportioned amongst them. The evidence further shows that after such agreement the several partners paid the debts of the partnership as follows: Rablin paid $5,020.88; plaintiffs, $13,945.61; Lyon, $1,550.57, and Powers $1,091.97; making in all $22,417.97. The excess over $20,000 is partly composed of demands presented after the settlement and not estimated at that time.

"The evidence does not show that each member, in assuming to pay a certain sum as his share of the debts, agreed to pay any particular debt of the firm, but he was to pay the amount assumed in discharge of any debts due from the firm, and was to have credit for the amount of the debts so paid.

"Upon the trial, when the plaintiffs rested their case, the defendant moved for a nonsuit, which was denied, and exception taken. The motion for a nonsuit was renewed by the defendant after all the evidence in the case had been put in. This motion was also denied, and defendant excepted; and thereupon the court charged the jury as follows:

"(1) ' So far as the law of this case is concerned, it being an action between copartners or persons that were copartners, and in and about copartnershi  funds, the right of recovery depends entirely upon whetl  ir this action is based upon some special agreement or undertaking between the copartners aside from the scope of the partnership business.

"(2) ' I have a case I will read from: A specific promise or arrangement between partners, though in respect to a part of the common funds thereof, takes it out of the general account in equity, and makes it the subject of an action of law.

Edwards and another vs. Remington.

" (3) 'That is what this is. This suit is brought by the plaintiff to recover from the defendant the amount alleged by him to have been paid in discharge or part discharge of the sum of $4,500, which they allege the defendant assumed and agreed to pay as his portion of the general indebtedness of the company, at the time the company was dissolved or finished up or quit its general business. Upon this point I have written out and charge you as follows:

" (4) 'If you find that the members of the company met together for the purpose of dissolving the same, and of ascertaining the amount of the company's indebtedness, and then ascertained its indebtedness to be $20,000, and thereupon apportioned among the several members the just and fair proportion thereof which each should assume and pay and keep the others harmless, paying the respective sums so assumed by each, and each assumed and then promised to pay the sum so apportioned to him, and that the defendant's proportion was $4,500, which he then assumed and promised to each of the several members to pay; and if you further find that the defendant afterwards refused and neglected to pay the same, and that the plaintiffs, being liable thereon, were obliged to and did pay the amount assumed by the defendant, or any portion of it, then you should find for the plaintiffs, as your verdict, the sum so paid by them on defendant's assumed proportion, with interest on the amount so paid by them, the plaintiffs, up to the time of said trial.

" (5) 'On the other hand, if you should find there was no apportionment of the indebtedness of the company, or even if you should find there was an apportionment of the indebtedness among the several members, but that the defendant refused to accept, refused to promise to pay the same, then you should find for the defendant.

" (6) 'But if you should find that he assented to it,— assented to pay the proportion, promised the other members he would pay, and neglected to pay, and the plaintiffs thereafter

paid it, or any part of it, the amount they so paid they are entitled to recover, with interest.'

"Thereupon the defendant requested the court to charge the jury that if they found there was a large part or portion, or any amount, of the property still held by the firm, undisposed of in any way, unsettled, then they must find for the defendant; which request was refused for this reason: The whole equities of an accounting between these copartners are not disturbed by this action at law, but in that respect he has a full and complete remedy.

"Counsel for defendant requested the court to instruct the jury as follows: 'That in order to entitle the plaintiffs to recover in this action, it is necessary that they show an express promise on the part of the defendant to them to pay some sum of money as part of the partnership indebtedness.'

"And the court thereupon further charged the jury as follows: 'In regard to the promise, it should be a promise to pay — a promise to pay the proportion that was awarded to him and which he assumed. There should be a promise to pay it, that is true; but *it is a sufficient promise if he said to the members assembled there: I will pay this sum; I will assume it; I will pay it and keep you harmless from it. That is a sufficient direct promise to each.*'

"The defendant excepted to the second and fourth paragraphs of the charge, to the refusal of the court to charge as requested by him, and to that part of the last paragraph of the charge, which is printed above in italics."

There was a verdict for the plaintiffs, and judgment thereon, from which the defendant appealed.

The cause was submitted on the brief of *G. W. Cate* for the appellant, and that of *Webb & Cochran* and *Geo. R. Gardner* for the respondents.

For the appellant it was contended, among other things, 1. That the nonsuit should have been granted. One partner has no claim against his copartner individually on account of part-

nership transactions. *Tolford v. Tolford*, 44 Wis., 547. The sums paid by the plaintiffs not having been paid upon the express promise of the defendant to repay the same, and the demands paid being partnership demands, such demands were extinguished, and such payments were on partnership account, and the plaintiffs' remedy, if any, is against the partnership. Collyer on Part., 143; Parsons on Part., 510; *Murray v. Bogert*, 14 Johns., 318; *Townsend v. Goewey*, 19 Wend., 424. There did not appear to have been any settlement of the partnership affairs, nor any determination of the sums, if any, due to or from the members. Nor was it shown that the sums paid by the plaintiffs in excess of their undertaking were just claims against the partnership, or that they had ever been passed upon or adjusted by the company. 2. That the court erred in refusing to charge the jury that if they should find there was partnership property undisposed of, they must find for the defendant. One partner cannot maintain an action at law against another, or the members of the firm, so long as there is anything left to be adjusted, or which necessitates its continuance or keeps it in existence for any purpose. *Lower v. Denton*, 9 Wis., 268; *Sprout v. Crowley*, 30 id., 188; *Shields v. Fuller*, 4 id., 102.

For the respondents it was argued, that copartners may make valid express contracts between themselves in respect to partnership matters, and actions at law may be maintained on such contracts without regard to the partnership existing between the parties, or the state of their firm accounts. *Sprout v. Crowley*, 30 Wis., 187; *Gauger v. Pautz*, 45 id., 449; *Musier v. Trumpbour*, 5 Wend., 274; *Townsend v. Goewey*, 19 id., 424; *Glover v. Tuck*, 24 id., 153; 1 Parsons on Con. (5th ed.), 163-5; *Collamer v. Foster*, 26 Vt., 754; *Williams v. Henshaw*, 11 Pick., 82; *Read v. Nevitt*, 41 Wis., 348. In general, actions at law for breaches of contracts between partners may be maintained, unless the matter involved relates to the partnership business, and requires an adjustment of the

partnership accounts, and the damages can only be ascertained by first settling such accounts. *Clark v. Dibble*, 16 Wend., 601; *Paine v. Thacher*, 25 id., 450; *Calvert v. Marlow*, 6 Ala., 342; *Estes v. Whipple*, 12 Vt., 373; *Capen v. Barrows*, 1 Gray, 376; *Ridgway v. Grant*, 17 Ill., 117; Collyer on Part., §§ 274-280.

TAYLOR, J. The learned counsel for the appellant makes the following points, upon which he relies for a reversal of the judgment: *First*, the court erred in refusing to order a nonsuit; *second*, the court erred in refusing to charge the jury that if they should find that there was a large portion of property still owned by the firm undisposed of in any way, they must find for the defendant; *third*, the court erred in refusing to instruct the jury that, to entitle the plaintiffs to recover, it was necessary that they show an express promise on the part of the defendant, to them, to pay some sum of money as a part of the partnership indebtedness; *fourth*, the court erred in giving the instructions numbered above (2) and (4); *fifth*, the court erred in refusing to instruct the jury that if they found that there was a large part or portion, or any amount, of property still held by the firm undisposed of, they must find for the defendant; *sixth*, the court erred in refusing to set aside the verdict and grant a new trial.

The right of the plaintiffs to recover in this action, we think, depends, *first*, upon questions of fact, viz.: (1) Whether at the time alleged in the complaint the construction company, as a firm, owed the sum of $20,000 or over; (2) whether the members of the firm met together and mutually agreed amongst themselves to apportion such indebtedness amongst the several members of the firm; (3) whether such apportionment was in fact made and assented to by the several members; (4) whether each member assumed to pay the amount apportioned to him, and promised the other members to make such payment; and *second*, upon the question whether, as a

conclusion of law upon the facts above stated, the several members of the firm were bound by such agreement, the one to the other. Upon the questions of fact we need only say that the evidence tended to prove them, and the finding of the jury is conclusive upon this court. If the contract which the evidence on the part of the plaintiffs tended very strongly to prove, was a valid agreement at law between the several members of the firm, then we are of the opinion that if, by reason of the defendant's failure to pay the amount of the debts apportioned to him, the plaintiffs, as members of the firm, were compelled to pay, or if the defendant, after the lapse of a reasonable time, had neglected to pay the amount agreed upon, and the plaintiffs voluntarily paid the sum apportioned to the defendant, or some part thereof, and the plaintiffs and the other members, including the defendant, had in fact paid the whole of said $20,000 of indebtedness, then the plaintiffs were entitled to recover of the defendant such part of the sum agreed to be paid by him as he had neglected to pay, and as the plaintiffs had in fact paid.

The principal question in the case is, whether the contract, as proved, or which the evidence clearly tended to prove, was void for want of any consideration to support it. There is certainly nothing in the relation of the parties as copartners which prohibits them from contracting with each other; and a valid contract made between partners, which can be enforced without a general accounting as to the partnership business, must be enforced in the courts at law in the same manner as other contracts between other parties. We think there was a sufficient consideration to support this agreement, in the mutual promises of the respective partners to each other. They were all jointly bound for the payment of the whole $20,000 of the debts owing by the firm, and this sum was, as between the partners, chargeable upon the joint property of the firm, which, as between themselves, would have to be exhausted before their separate property would be charged there-

with. By the mutual agreement of the partners, the firm property, as between themselves, was relieved from the payment of the debt, and it is made a debt in severalty against the separate property of the individual members. This arrangement might be beneficial to the partners, especially if the partnership property was of such a character that it could not be converted into money promptly for the payment of the debts without a great sacrifice of its value. This consideration would be sufficient to support the mutual promises of the partners to pay a definite part of the debts out of the separate property of the respective partners. Again, the fact that each partner is liable for the whole debt, and that his separate property is liable to be seized and sold by the creditors for the payment of the whole, and that the payment of a portion of the debt out of the separate property of another partner would lessen his liability to the creditors of the firm and relieve his separate property to that extent, would be a sufficient consideration to sustain a contract on his part to pay another definite portion of said debt. The mutual promises, if performed, would be beneficial to the respective parties making them. The contract which the plaintiff's evidence tended to prove in this case, was therefore a legal contract, founded upon a sufficient consideration; and as between the parties it can be enforced, we think, in an action at law, even though there were some partnership assets not disposed of, or other debts against the partnership, exceeding the $20,000, not provided for by the contract. The contract can be enforced without any accounting between the partners as to the general business of the firm. All that is necessary to fix the liability of the defendant is, to prove the contract, that the debts of the firm amounted to $20,000 or more, that the defendant did not pay the sum he agreed to pay in discharge of the debts, that the $20,000 of debts have been paid, and that the plaintiffs have paid more of the debts than they would have been required to pay had the defendant performed his agreement and paid what

he agreed to pay. As between the plaintiffs and the creditors, they were bound to pay all the debts; and, the defendant having neglected to pay the amount he agreed to pay, the plaintiffs were legally bound to pay the same, and they were damaged in just the sum which they were compelled to pay more than they would have paid had the defendant performed his contract with them and the other partners. In this case the evidence shows that the business of the partnership was in fact closed, and the partnership dissolved for all practical purposes, when this agreement was made. The only thing left unfinished was the payment of the debts, and the reducing to possession of some of the assets of the firm; and there is some evidence in the case showing that the assets of the firm were divided between the respective partners at the time the alleged agreement was made. Had this fact been clearly alleged in the complaint and established by the evidence, there could have been no doubt as to the liability of the respective partners upon their separate promises to pay a fixed and agreed portion of the debts of the firm. It is a common method of adjusting the business of a partnership, that one or more of the members of the firm take the whole or a definite part of the assets, and in consideration thereof agree to pay all the debts of the firm; and no one has ever doubted that such an agreement was a valid one, and that any damage which might result to the other members of the firm by the neglect of the party so agreeing to pay the debts, could be recovered in an action at law. We think that, without resorting to the decisions of other courts, the questions involved in this case have been determined against the appellant by this court.

In *Sprout v. Crowley*, 30 Wis., 187, Justice LYON, in delivering the opinion of the court, says: "But where there is an express agreement by one partner to repay to the other his share of advances made by the latter on account of the partnership business, the amount of such share becomes thereby the debt of the partner who has thus agreed to pay the same,

which may be recovered in an action brought directly therefor, without any regard to the partnership relation existing between the parties, or the state of their firm accounts."

In *Gauger v. Pautz*, 45 Wis., 449, Justice LYON again says: "Within the same rule" (referring to the rule laid down in *Sprout v. Crowley, supra*), "the instructions prayed on behalf of the defendant were properly refused. They are, (1), that unless there was a final settlement of all partnership matters before this action was commenced, the action could not be maintained; and (2), that unless the partnership was fully and fairly terminated and settled, and unless the defendant promised to pay the plaintiff's claim before suit brought, the action could not be maintained.

" These instructions are based upon the assumption that one partner cannot maintain an action at law against his copartner, in respect to any matter of partnership concern, until there has been a dissolution of the partnership and a full settlement and adjustment of all the partnership affairs. This proposition was expressly rejected in *Sprout v. Crowley*."

These decisions are sustained by the authority of the courts in England, and of the courts of other states of the United States. In *Brown v. Tapscott*, 6 M. & W., 119, the English court of exchequer held, that when the several partners had agreed among themselves to contribute a definite proportion of the expenses of the business of the partnership to the partner having the management of the business of the firm, as it might be necessary to call from time to time, should the earnings of the business be insufficient to pay expenses, it being admitted on the trial that the earnings were insufficient to pay the expenses, and that the defendant had been applied to to pay his proportion of such expenses, and had promised to pay, an action of *assumpsit* upon such promise to pay could be maintained, although the partnership affairs remained unsettled. See, also, the following cases: *Venning v. Leckie*, 13 East, 7; Collyer on Partnership (6th ed.), §§ 196, 197, and

note on page 332; 2 Lindley's Law of Partnership (4th ed.), 1027; *Glover v. Tuck*, 24 Wend., 153, 158; *Wadsworth v. Manning*, 4 Md., 59; *Wheeler v. Arnold*, 30 Mich., 304; *Williams v. Henshaw*, 11 Pick., 79, 83–4; *Collamer v. Foster*, 26 Vt., 754; *Gibson v. Moore*, 6 N. H., 547; *Coffee v. Brian*, 3 Bing., 54; *Wilson v. Cutting*, 10 Bing., 436; *Sedgwick v. Daniell*, 2 H. & N., 319; *Currier v. Webster*, 45 N. H., 226, 233; *Scott v. Campbell*, 30 Ala., 729; *Wills v. Simmonds*, 51 How. Pr. R., 48; *Jackson v. Stopherd*, 2 Cr. & M., 361.

In *Williams v. Henshaw, supra*, the court say: "So, if one partner covenants or agrees to advance a certain portion of the capital stock, or to perform any other specific acts, an action will lie for a violation of these express contracts, even during the continuance of the partnership." "If the plaintiffs had shown an agreement on the part of the defendants to advance one-half of the money necessary to carry on the joint speculation, or a promise to repay the plaintiffs for their advance, they might well recover upon such undertaking in the present action." In this case the evidence is clearly sufficient to support a finding that the firm was dissolved by the mutual consent of the parties. The purpose for which it was formed had been fully accomplished; there was nothing further for the firm to do, except to reduce its assets to possession and pay off the debts existing against the firm. As to the payment of the debts of the firm to the extent of $20,000, it was mutually agreed between the partners that it should be apportioned amongst them according to the supposed equities of the case; it was so apportioned, and each partner assumed and agreed to pay the amount so apportioned to him. This agreement, as we have said above, was valid and binding, and the rights of each party under it can be determined and adjusted without any regard to the general settlement of the affairs of the partnership. If, by a failure of any one of the partners to perform his part of this contract by paying the sum agreed to be paid by him, some other member of the firm was compelled

to pay more than he agreed to pay, such party is clearly damaged by the default of the party not paying, to the amount which he is so compelled to pay; and there does not appear to be any good reason, either upon principle or authority, why the party so damaged by a breach of such agreement may not maintain an action at law upon such contract to recover his damages. If the firm had not accomplished the purposes for which it had been formed, and they had become indebted in the sum of $20,000, which it was necessary to provide for immediately in order to further prosecute their business, and the partners had met, and each had agreed with the others to advance out of his separate funds an agreed sum to pay off said debt, and any one had failed to make his payment as agreed, and some other members had advanced the amount, and so the debt had been paid off and the business continued, it is clear that, under the authorities cited, the delinquent party would be liable in an action at law to the party advancing his proportion. The supposed case is in no way different in principle from this case, and the reasons for sustaining the action in the case at bar would be fully as strong as in the one supposed.

In this view of the case, the instructions given the jury by the learned circuit judge were correct, and the instructions asked and refused were properly refused. The instruction requested, and which was refused, " that, in order to find for the plaintiffs, it was necessary that the plaintiffs should show an express promise on the part of the defendant to them to pay some sum of money as a part of the partnership debt," was properly rejected, for the reason that it would tend to mislead the jury. If the instruction had been given, the jury might have supposed that an express promise to pay some part of the debt, made by the defendant to the plaintiffs and the other members of the firm, would not be sufficient to enable the plaintiffs to recover; but that a separate agreement must be shown between the plaintiffs and the defendant, dis-

connected from the other parties to the contract, which, we think, was clearly unnecessary.

The learned counsel for the appellant urges that the plaintiffs ought not to be permitted to recover, because they have not alleged in the complaint that the whole $20,000 of debts had been paid at the time the action was commenced; and that, consequently, admitting that the plaintiffs had paid a share of the debts over and above the amount agreed to be paid by them, and equal to the amount which the defendant had agreed to pay and had not paid, they did not show a right to recover of the defendant the whole amount for which he was in default, as the others who had not paid would be equally liable to the plaintiffs as the defendant for a portion of the money paid by the plaintiffs. The allegations of the complaint are, " that the defendant utterly neglected and refused to pay the said amount so as aforesaid apportioned to and assumed by him; that in consequence of his said failure the plaintiffs have been compelled to pay, and have paid, the said amount apportioned to the defendant." This language, it is true, is very general, but there is a specific allegation that the defendant refused to pay his portion of the debt, and, by reason thereof, the plaintiffs were compelled to pay and did pay the same. This allegation can only be established by proof that the whole $20,000 was paid, and that the plaintiffs had paid the amount apportioned to them, and, in addition thereto, the amount apportioned to the defendant; for, as is insisted by the learned counsel for the defendant, if the whole debt had not been paid, the plaintiffs would not, in contemplation of law, have paid the whole amount agreed to be paid by the defendant, and what they did pay, beyond the amount agreed to be paid by them, would be paid as much for the benefit of the others who had not paid as for the defendant. We think the allegations of the complaint were sufficient to admit of the proof that the whole debt was in fact paid before the commencement of the action.

It is urged by the learned counsel for the appellant, that there is no evidence that the plaintiffs were compelled to pay the debts of the firm, and that if they paid them voluntarily the defendant would not be liable to refund the amount, even though they had agreed to pay a certain portion thereof. We think otherwise. If the defendant agreed to pay a portion of the debts of the firm with his separate funds, and no time was fixed for such payment, he was bound to make payment within a reasonable time; and if he neglected to do so, the other partners need not wait until the creditors of the firm got judgment against the firm, upon which their separate property could be seized, before paying such debts. Where two or more persons are jointly liable for the payment of the same debt, one need not wait until after judgment before he pays the debt, in order to charge his co-debtor in an action for contribution; he may pay it at any time after the debt becomes due, and then bring an action against his co-debtor for contribution. So, in this case, the members of the firm were jointly indebted to their creditors in the sum of $20,000, and they agreed amongst themselves that each should contribute to the payment of such debt a definite sum out of their separate property. This agreement fixed the right to contribution as between the parties.

We think the verdict was sustained by the evidence, and that the judgment ought to be affirmed.

*By the Court.*— The judgment of the circuit court is affirmed.