CASTELLO, Respondent, vs. CITIZENS STATE BANK OF MAN-
AWA, Appellant.

*September 16—October 5, 1909.*

*Banks and banking: Oral contract of deposit: Revocation: Cashier
issuing his personal check instead of certificate of deposit: Re-
tention by depositor: Estoppel: Waiver: Questions for jury.*

1. Evidence tending to show that plaintiff's husband, having money
   in the hands of the cashier of defendant bank, told the cashier
   and plaintiff that he wished to give the money to plaintiff, told
   the cashier to give her a certificate of deposit therefor, and
   advised plaintiff to get such a certificate; that the cashier, who
   had full charge of the business of the bank, informed plaintiff
   that if she left the money in the bank for six months she
   would get three per cent. interest, but if she took it out before
   that time she would get no interest, and at the same time wrote
   out his personal check on the bank and handed it to her; that
   she took the check supposing it to be a certificate of deposit,
   and kept it for several months without demanding payment
   thereon and without knowledge of its true character; that she
   was inexperienced in business; and that there was nothing un-
   less it was the check to suggest a loan by plaintiff to the cashier
   personally,—is *held* sufficient to warrant the jury in finding a
   contract of deposit between plaintiff and the bank.
2. Assuming, as found by the jury, that prior to delivery of the
   check to plaintiff there was an oral contract of deposit between
   the bank, acting through its cashier, and the plaintiff, it cannot
   be held as matter of law that the substitution of the cashier's
   personal check therefor and its acceptance and retention by
   plaintiff under the circumstances stated revoked or discharged
   such oral contract or estopped the plaintiff to enforce it, even
   though it appeared that had she carefully examined the check
   she would have known the difference between it and a certifi-
   cate of deposit, and had she presented it for payment within
   sixty days it would have been paid.
3. Waiver must be with knowledge or with reasonable means of
   knowledge of the facts and with intent to forego some right, al-
   though the knowledge may be either actual or constructive and
   the intent expressed or implied.

APPEAL from a judgment of the circuit court for Waupaca
county: CHAS. M. WEBB, Circuit Judge. *Affirmed.*

*Llewellyn Cole,* for the appellant, cited, among other cases, *Bickley v. Commercial Bank,* 39 S. C. 281, 17 S. E. 977; *S. C.* 43 S. C. 528, 21 S. E. 886; *Jumper v. Commercial Bank,* 39 S. C. 296, 17 S. E. 980; *Bostwick v. Mut. L. Ins. Co.* 116 Wis. 392, 89 N. W. 538, 92 N. W. 246.

*Byron B. Park,* for the respondent, cited, among other authorities, *Heim v. First Nat. Bank,* 76 Neb. 831, 107 N. W. 1019; *Coleman v. First Nat. Bank,* 53 N. Y. 388; *Ziegler v. First Nat. Bank,* 93 Pa. St. 393; *Steckel v. First Nat. Bank,* 93 Pa. St. 376, 39 Am. Rep. 758, and other cases.

TIMLIN, J.    Upon a complaint averring that on August 28, 1906, the plaintiff deposited with defendant bank $1,527.04 under a contract made with said bank that, if the said money should remain on deposit for a period of six months from said date, said bank would pay to the plaintiff said sum with interest thereon at the rate of three per cent. per annum, or, if not left six months so as to draw said rate of interest, then to be paid to the plaintiff at any time prior to the expiration of said six months on her demand, and that demand was made and payment refused, the plaintiff recovered of the defendant bank the said sum with interest from the date of demand.    Defendant appeals, alleging error in that there was a material variance between the allegations of the complaint and the proofs, and error in overruling defendant's motion for direction of a verdict in its favor.

The evidence of the respondent tended to show that her husband, having this money in the hands of defendant's cashier deposited in the account of the latter in the defendant bank and presently payable, desired to give the money to the respondent, and made this known to the cashier, the respondent, and others present.    He told the cashier to give the respondent a certificate of deposit and advised her to get a certificate of deposit.    The cashier then informed her that if she left the money in the bank for six months she would get

three per cent. interest, and if she took it out before that time she would not get any interest, and at the same time wrote out his personal check on the defendant bank and handed it to the respondent, who looked at it, supposing it to be a certificate of deposit, and took and kept possession of it without demand of payment until January 19, 1907, and without actual knowledge of its true legal character. Respondent was at the time a married woman thirty-one years of age, had lived on a farm all her life except the two years preceding the transaction in question, during which time she lived in the village with her husband, who kept a livery stable. She had no separate estate and had never been in any line of business. There was nothing to suggest a loan of money from respondent to the cashier personally unless it be the check above mentioned. The cashier was the principal executive officer of the defendant bank and had full charge of all its business.

There was upon the foregoing facts at least a question for the jury whether or not the cashier understood that the respondent and those speaking for her were proposing a contract of deposit between respondent and the bank to be made through the cashier in his official capacity, and whether or not the cashier did in this capacity assent to the same or designedly lead the respondent to believe that he assented to the same, prior to the execution of the check in question. As to the respondent the cashier was *prima facie* representing the bank, and he in no way prior to the execution of the check brought the fact to her notice or knowledge that he was acting or claiming to act in his personal or individual capacity. The contractual effect of passing out the check under the circumstances to an inexperienced woman was at least a matter for the jury. *Kaley v. Van Ostrand,* 134 Wis. 443, 114 N. W. 817. If the cashier intended that the plaintiff should understand that she was making a contract with the bank and the plaintiff did so understand, that is sufficient, there being an obvious consideration for such a contract. The cases cited

by the respondent and above noted amply sustain the authority of the jury to find a contract of deposit between the respondent and the bank upon this evidence. *Heim v. First Nat. Bank,* 76 Neb. 831, 107 N. W. 1019, and cases.

The appellant next contends that accepting the personal check of the cashier on August 28, 1906, then failing to examine it carefully or to read it, and thereafter holding it until January 19, 1907, without examination of the check or objection, brought the case within the rule of *Bostwick v. Mut. L. Ins. Co.* 116 Wis. 392, 89 N. W. 538, 92 N. W. 246, and that the trial court should have directed a verdict for defendant. There was no request upon the part of the appellant to have the question of waiver or estoppel submitted to the jury, but it is claimed that by reason of the facts aforesaid, coupled with the fact that the respondent admitted that had she carefully examined the check she would have known the difference between that and a certificate of deposit, and the further fact that had she presented the check for payment at any time within sixty days after its receipt by her it would have been paid by the bank, a verdict should have been directed for the appellant. The check was headed with the name of the bank, followed by these words: "Pay to the order of *Mrs. Thomas F. Castello* $1,527.04 fifteen hundred twenty-seven and four one-hundredths Dollars. G. E. Soli." The ordinary form of a certificate of deposit following the same heading would have been: "This certifies that *Mrs. Thomas F. Castello* has deposited in this bank $1,527.04 [repeated] payable to her order upon the return of this certificate properly indorsed. G. E. Soli, Cashier." This would probably be followed by a memorandum printed or stamped thereon relating to the interest terms. The difference is very plain to a lawyer, and the difference is rather in substance than in appearance or form, and to an inexperienced person the difference is not so striking as to arouse attention, even though such person might, upon carefully reading it, have observed

and appreciated the difference.    We must take up this question upon the assumption that prior to the delivery by the cashier of his personal check to the respondent there was an oral contract of deposit made and concluded between the respondent and the bank as found by the jury.    Its terms were all agreed upon, and it remained for the cashier to reduce them to writing in the form of a certificate of deposit.    *Bostwick v. Mut. L. Ins. Co.* 116 Wis. 392, 89 N. W. 538, 92 N. W. 246, much relied upon by appellant, is not in point. That was an action at law to rescind a contract whereby the insurance company undertook to deliver a certain kind of policy or contract.    The transaction sought to be rescinded was in effect a sale of several policies of life insurance to Bostwick and others.    The latter received and retained for a long time the thing purchased without carefully examining it for defects patent on its face, and during this time had the option, in case of death, to hold the insurance company as insurer. There was no existing insurance contract between Bostwick and the company at the time the company sent in the proposed policy, but the policy was forwarded to Bostwick in execution of a contract for the same and under a claim that it complied with the prior executory agreement.

In the case at bar there was first a valid oral contract between the bank, acting through its cashier, and the respondent for which the cashier without the knowledge or consent of the respondent substituted a writing in a form and by a person entirely unauthorized.    The cashier's check thus never became a contract at all, because not assented to, nor even a proposal to contract, because not brought to the attention of the other party.    The prior oral contract could only be revoked by mutual consent or discharged by release or its enforcement prevented by estoppel.    There was neither revocation, release, nor estoppel in the case at bar by mere retention of this check without knowledge of its contents on the part of respondent and under the mistaken impression that it

was given pursuant to and truly represented the anterior oral contract of deposit. True, the acceptance and retention of the check was evidence going to show that the contract of deposit was made with the cashier personally and not with the bank, while the sex and inexperience of the respondent and her apparent reliance upon the bank, and the fact that she did not read or examine the check or know its contents, were facts tending to the contrary.

Waiver must be with knowledge or with reasonable means of knowledge of the facts and with intent to forego some right, although the knowledge may be either actual or constructive and the intent expressed or implied. *Pabst B. Co. v. Milwaukee,* 126 Wis. 110, 105 N. W. 563; *McNaughton v. Des Moines L. Ins. Co., ante,* p. 214, 122 N. W. 764. The probative effect of her retention of the check under such circumstances is not so absolute as to authorize the direction of a verdict for the defendant.

*By the Court.*—The judgment of the circuit court is affirmed.